HUMISTON (STAINTHORP v.). See Cases Nos. 13,279–13,281.

## Case No. 6,866.

### In re HUMMITSH.

[2 N. B. R. 12 (Quarto, 3); 15 Pittsb. Leg. J. (O. S.) 494.] [1]

### District Court, E. D. Missouri. 1868.

BANKRUPTCY — DISCHARGE — INTEREST OF BANKRUPT—FALSE SWEARING.

Where the husband's equitable interest in the estate or property of the wife has been levied upon and sold under execution, the husband has no longer any interest or estate to be returned in his schedules; and he cannot be charged with swearing falsely in stating that he has no interest or estate in such property.

The bankrupt, in 1857, owning real estate, then subject to encumbrance for part of the purchase money, commenced the erection of several houses upon the property, and further encumbered parts of the property by deeds of trust, and becoming embarrassed and unable to complete his undertakings the property was further encumbered with mechanic's liens. Three of the lots, with the unfinished houses upon them, were exposed to sale upon the original encumbrance, and purchased in by the encumbrancer, Mrs. Rutgers. The remaining five were sold under the late encumbrances, and were purchased by Miller & Lich. Subsequently, Mrs. Rutgers sold the houses purchased by her to Mrs. Hummitsh, the wife of the bankrupt, taking her notes for the purchase money, and conveying the property to J. B. Evans, as trustee for Mrs. Hummitsh. The lien creditors recovered judgment for their debts, and sold the bankrupt's interest in the whole property under special execution, and Miller & Lich became the purchasers. Miller & Lich brought suit against Mrs. Hummitsh and her trustees, the bankrupt and the parties to the original encumbrance, to set aside the sale as improperly made, and for leave to redeem. This case will be found reported, 35 Mo. 50. The supreme court of Missouri upheld the validity of the sale and of the deed. Mrs. Hummitsh had no separate estate, but by sale of two of the houses she procured means to complete one of the houses and also received a surplus, which was invested from time to time until it amounted to some twelve thousand dollars. Opposition was made to the dis-

[1] [Reprinted by permission.]

charge, on the grounds that the bankrupt had failed to return his interest in this property held by the wife's trustee, the creditors contending that a wife having no separate estate could not by the use of his name cover up property from the creditors of the husband, the credit being really that of the husband and not that of the wife. Opposition was further made, in that the bankrupt had wilfully sworn falsely in his examination, by stating that as a substitute broker during the war he had made only about seven hundred dollars, when in fact he had made many thousand dollars which were invested in the name of the wife of the bankrupt. Much testimony was offered to show how much money was made by different brokers, fully developing the fact that the poor substitutes were swindled right and left, receiving sometimes not a tenth of the sums paid by the parties offering substitutes. The creditors attempted to show that of the money deposited by the wife with a note broker for the purpose of investment, a large proportion must have been derived from the husband's profits as a substitute broker.

TREAT, District Judge, held that as after Mrs. Rutgers had conveyed the real estate to the trustee of Mrs. Hummitsh, the creditors had sold under execution all the estate of the husband in the same, that the bankrupt had no longer any title or estate in the same to be returned in his schedule. And that, as related to the moneys invested in the name of the wife, the evidence did not show that any part thereof had been derived from the bankrupt's profits in the business of a substitute broker, and that the sums invested might be fully accounted for from the profits the wife had made from the sale of two of the houses conveyed to her by Mr. Rutgers. That it was not enough to show that the bankrupt might have made moneys which he had not accounted for, but that to prevent his discharge the bankrupt act [of 1867 (14 Stat. 531)] required the creditor to show that the bankrupt had wilfully sworn falsely, and that fact must be shown by the opposing creditors. Objections overruled and discharge granted.